IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BRENDA KOTEWA, ) | |
| ) | |
| Plaintiff, ) | Case No. CV05-426-S-EJL |
| ) | |
| vs. ) | MEMORANDUM ORDER |
| ) | |
| LIVING INDEPENDENCE NETWORK CORP., ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

Pending before the Court in the above-entitled matter is Defendant Living Independence Network Corporation's ("LINC") motion for summary judgment ( Docket No. 16) and Plaintiff Brenda Kotewa's ("Kotewa") motion to present live testimony (Docket No. 21). Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without oral argument.

**Motion to Present Live Testimony**

The Court notes Plaintiff filed a motion requesting permission to present live testimony in opposition to the motion for summary judgment. Counsel for Plaintiff seeks to give the Court the opportunity to consider the demeanor, physical stature and temperament of the Plaintiff. This request is not proper since, for purposes of summary judgment, the Court does not weigh the credibility of the witnesses and Plaintiff's deposition testimony is before the Court in written format. The motion is denied.

**Motion for Summary Judgment**

1. <u>Standard of Review</u>

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The Supreme Court has made it clear that under Rule 56 summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element which is essential to the non-moving party's case and upon which the non-moving party will bear the burden of proof at trial. <u>See</u>, <u>Celotex Corp v. Catrett</u>, 477 U.S. 317, 322 (1986). If the non-moving party fails to make such a showing on any essential element, "there can be no `genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Id.</u> at 323.[1]

Moreover, under Rule 56, it is clear that an issue, in order to preclude entry of summary judgment, must be both "material" and "genuine." An issue is "material" if it affects the outcome of the litigation. An issue, before it may be considered "genuine," must be established by "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." <u>Hahn v. Sargent</u>, 523 F.2d 461, 464 (1st Cir. 1975) (<u>quoting</u> <u>First Nat'l Bank v. Cities Serv. Co. Inc.</u>, 391 U.S. 253, 289 (1968)). The Ninth Circuit cases are in accord. <u>See, e.g.</u>, <u>British Motor Car Distrib. v. San Francisco Automotive Indus. Welfare Fund</u>, 882 F.2d 371 (9th Cir. 1989).

---

[1] <u>See also</u>, Rule 56(e) which provides, in part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

According to the Ninth Circuit, in order to withstand a motion for summary judgment, a party

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

Id. at 374 (citation omitted).

Of course, when applying the above standard, the court must view all of the evidence in a light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Hughes v. United States, 953 F.2d 531, 541 (9th Cir. 1992).

2. Procedural Background

Kotewa filed her complaint in state court on September 15, 2005. The case was removed to federal court by Defendant LINC on October 14, 2005. The Court granted the parties' stipulation to amend the complaint on September 27, 2005, however, Plaintiff's counsel failed to file the proposed amended complaint with the proper caption as directed in the Court's Order dated September 27, 2005 (Docket No. 15). Accordingly, the Court will use the proposed Amended Complaint attached as Exhibit A to the stipulation to amend the complaint (Docket No. 12) as the Plaintiff's pleadings for purposes of the motion for summary judgment.

Defendant notes in its memorandum in support of the motion for summary judgment, Docket No. 16-3, p. 1, that Plaintiff's prior claims for wrongful termination in violation of public policy, interference with contract and interference with prospective business advantage (Counts III, IV, and V) have been dismissed as well as individual claims against Defendant Roger Howard. Accordingly, at the time the motion for summary judgment was filed the remaining claims are Count I [violation of the Americans with Disabilities Act ("ADA")] and Count II [violation of the Idaho Human Rights Act ("IHRA")]. In the motion for summary judgment, Defendant argued Count II was procedurally defaulted by Plaintiff and Plaintiff was unable to prove the essential elements of her federal disability claim. Plaintiff responded to the motion for summary judgment by conceding the only cause of action she intends to go forward on is retaliatory discharge prohibited by the

Amercians with Disabilities Act ("ADA").  <u>See</u> Memorandum in Opposition to Defendant's Motion for Summary Judgment (Docket No. 23, p.1).  Therefore, all other claims contained in the Amended Complaint are hereby dismissed.

Defendant argues that Plaintiff's retaliatory discharge claim was not pled and should be dismissed.  While the Court agrees that the retaliatory discharge claim wherein Plaintiff contends her termination by LINC was at least partially the result of advocating on behalf of herself and other disabled clients of LINC for access to the facility in which she worked has evolved during the course of the litigation, the Court also finds that the Defendant was at least minimally put on notice of the claim under the ADA based on paragraph 86 of the Amended Complaint which provides:

> 86. Upon information and belief, Plaintiff further asserts that Defendants terminated her in retaliation for her repeated requests for accomodations for herself and Defendants' clients.

The Ninth Circuit has ruled Plaintiff need not decide what kind of case she is bringing at the outset of the litigation.  In <u>Stegall v. Citadel Broad. Co.</u>, 350 F.3d 1061, 1071-72 (9th Cir. 2003) the Ninth Circuit held:

> Indeed, a plaintiff need not decide what kind of a case she is bringing at the outset.  <u>See</u> <u>Price Waterhouse</u>, 490 U.S. at 247 n. 12, 109 S.Ct. 1775 ("Nothing in this opinion should be taken to suggest that a case must be correctly labeled as either a "pretext" case or a "mixed-motives" case from the beginning in the District Court; indeed, we expect that plaintiffs will often allege, in the alternative, that their cases are both. . . . At some point in the proceedings, of course, the District Court must decide whether a particular case involves mixed-motives.").  Accordingly, it is common to have an employer's reasons for terminating an employee fleshed out during the course of litigation.  <u>See</u>, e.g., <u>Lindahl v. Air France</u>, 930 F.2d 1434 (9th Cir.1991) (Noting that "[s]imply because an explanation comes after the beginning of litigation does not make it inherently incredible[,]" but finding on the facts of the case before it that the employer's differing reasons suggested the later reason was fabricated.).

For these reasons, the Court finds the remaining claim of retaliatory discharge based on Kotewa's request for accessability at the LINC facility for herself and LINC clients was adequately pled and this remaining claim will be considered for purposes of the motion for summary judgment.

3. <u>Factual Background</u>

The factual background will be limited to the facts surrounding the claim of retaliatory discharge by LINC.  LINC provides services and advocacy with and on behalf of people with disabilities.  A majority of the board members of LINC are people with disabilities.  LINC's policy is to hire people with disabilities and LINC employs a significant number of people with disabilities and some that use wheelchairs or carts.

It is undisputed that Kotewa suffers from spina bifida, a disability within the meaning of the ADA.  Kotewa is confined to a wheelchair.  Kotewa was hired in 2002 by LINC for a clerical position.  In 2003, Kotewa changed positions and became a Community Resource Coordinator for LINC.  Kotewa's supervisor was LINC's Executive Director, Roger Howard ("Howard').

In 2003, the Boise staff of LINC met with Howard to air a series of problems they were having with Kotewa relating to her temperament and defensiveness.  In late 2003, Kotewa wrote a letter criticizing independent living centers to a national disability advocacy magazine.  She signed the letter using her name and LINC.  Howard had no knowledge of the letter before it was published and it was against LINC's policies to have employees write on behalf of the organization without proper approval.

In 2004, Kotewa contacted a board member and complained about other co-workers.  Howard was informed of the contact by the board member.  Howard confronted Kotewa on the issue and informed her that such action was a fireable offense and if she had issues with co-workers she needed to bring them to him.  Instead of firing her, Howard told her to look for other work and offered to write a letter of recommendation on her behalf.  A letter of recommendation was written by Howard on July 14, 2004 for a job Kotewa had applied for at Boise State University.

In December 2004, Plaintiff was evaluated and her performance was deemed good.  In January of 2005, LINC moved into some additional space in the building they had previously operated out of.  There was a door on the side of the building that was accessible by people with disabilities, but the new front door was not accessible (no lever handle and door partially blocked by furniture/equipment) when LINC first moved into the new space.  On January 25, 2006, Jennifer

Grush-Dale ("Grush-Dale") sent an email indicating employees should encourage clients to use the new front door. Kotewa sent a reply email questioning whether the new front door was ADA accessible and asked that a sign on another door saying "staff only" be taken down so clients could have access through the side door if necessary. The email also stated "I do not mean to be confrontational, but I must advocate for the inclusion of our people." Grush-Dale referred Kotewa to Howard who was also the boss of Grush-Dale.

Howard testified in his deposition that he was offended by the email as Kotewa made it sound like LINC needed to be convinced to make the new space accessible to the disabled when LINC is in the business of advocating and providing services to disabled persons. Howard's response at 9:31 a.m. indicated a list of problems related to the move (like the front door modifications being completed) needed to be made and prioritized and that Kotewa should re-read her message to see how she would feel if it was directed at her. Kotewa responded on January 25, 2005 at 2:31 p.m. indicating she got angry with her child over the weekend and that she yelled at her child which left her child in tears. She states "she was not listening because I was not listening, and, we follow the example given to us." Howard did not understand this response and thought it came out of left field, but before he could respond that day, Kotewa sent another email to him. At 4:56 p.m., Kotewa responded again to Howard and said she would give a straight answer instead of a parable and then listed complaints about co-workers stating inappropriate remarks about who is deserving to birth a child, statements about not hiring another wheelchair employee and a co-worker who was treated disrespectfully so she left her job. She also stated she wanted the building to become more accessible to all people with disabilities, not less.

Howard admits there were accessibility problems with the new front door when they first moved into the new space, that the "staff only" sign was removed from the side door and to his knowledge there were no instances of anyone being denied access to LINC. Howard denies Kotewa was terminated because she complained about the front door access. Howard investigated the three allegations in the email response of 4:56 p.m. and found them to be without merit. Howard interpreted Kotewa's complaints in her 4:56 p.m. email about other co-workers to be another instance of Kotewa not getting along with her co-workers. On Monday, January 31, 2005, Kotewa's

employment with LINC was involuntarily terminated. The termination decision was ratified by the Board of Directors. Howard's termination letter stated "the reason for this dismissal for cause is insubordination, a lack of courtesy, cooperation and tact in dealing with supervisors and fellow workers." The letter also states "An inability to effectively communicate and cooperate with coworkers, to resolve internal conflicts, and recurring instances of interpersonal problems have made it necessary for me to pursue this course of action."

Kotewa filed a complaint with the EEOC and IHRC. After receiving a notice of right to sue from the EEOC, she filed her complaint in state court on September 15, 2005.

4. Analysis

The ADA prohibition against retaliation, 42 U.S.C. § 12203(a) provides:

> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation proceeding, or hearing under this chapter.

In Plaintiff's response memorandum, Kotewa cites to § 12203(b) which provides:

> Interference, coercion, or intimidation - It shall be unlawful to coerce, intimidate, threaten or interfere with any individual in the exercise or enjoyment of, or account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

The Court finds there is no evidence of interference, coercion or intimidation by LINC or Kotewa's supervisor, Howard. Therefore, the Court will apply § 12203(a) for purposes of a retaliatory discharge claim under the ADA.

A. Standard of Proof for a Retaliation Claim

The Ninth Circuit has adopted the Title VII framework for analyzing ADA retaliation claims. Barnett v. U.S. Air, 228 F.3d 1105, 1121 (9th Cir. 2000). The threshold question for purposes of this motion for summary judgment is what is the level of proof required for Plaintiff to survive summary judgment. In 1987, the Ninth Circuit has held "The McDonnell Douglas order and allocation of proof for disparate treatment cases also governs retaliation claims." Yartzoff v. Thomas, 809 F.2d 1371 (9th Cir. 1987). Since 1987, there have been some judicial rulings and statutory amendments that have helped to clarify the standard of proof. Plaintiff maintains the

MEMORANDUM ORDER - Page 7
07ORDERS\KOTEWA_SJ.WPD

McDonnell Douglas test does not apply, the mixed-motive test applies which requires Plaintiff only to present sufficient evidence (direct or circumstantial) for a reasonable jury to conclude by a preponderance of the evidence that the ADA complaints were a motivating factor for her termination.  Alternatively, Plaintiff maintains she has met the requirement of showing LINC's proffered explanation for the termination is pretextual under McDonnell Douglas.  Defendant maintains the McDonnell Douglas burden shifting test applies and since the standard of proof for mixed-motive retaliation cases was not modified by the 1991 amendments to the Civil Rights Act, that under this test Plaintiff has not met her burden of proof of presenting direct evidence.  Further, Defendant argues Plaintiff has not carried her burden of persuasion for a single motive or pretext retaliation claim which allows direct and circumstantial evidence to be considered.

In order to understand the two points of view, the Court needs to examine the history of the mixed-motive case.  The United States Supreme Court established the mixed-motive claim in Price Waterhouse v. Hopkins, 490 U.S. 228, 260 (1989):

> In [single motive] cases the issue is whether either illegal or legal motives, but not both, were the "true" motives behind the [employment] decision.  In mixed-motive cases, however, there is no one "true" motive behind the decision.  Instead the decision is a result of multiple factors, at lest one of which is legitimate.

" The significance of the distinction between the 'single motive' and 'mixed-motive' is most often seen towards the end of a trial when the district court must instruct the jury."  Stegall v. Citadel Broad. Co., 350 F.3d 1061, 1067 (9th Cir. 2004).  In Price Waterhouse, the plurality decision held that in a mixed-motive case employers are entitled to a complete affirmative defense if the employer can demonstrate by a preponderance of the evidence that it would have taken the same employment action absent any discriminatory or retaliatory motive – also known as the "but for" causation test or "same decision defense."  After the Price Waterhouse opinion was issued, the courts were split on whether a plaintiff was required to produce direct evidence of discrimination in order to establish mixed-motive liability under § 2000e-2(m) of Title VII since the limiting language requiring "direct evidence" was in Justice O'Connor's concurring opinion and the overall ruling in Price Waterhouse was a plurality ruling.  In response to the Price Waterhouse decision, Congress passed the 1991 amendments to the Civil Rights Act which  "clarified (1) that a Title VII violation is established

through proof that a protected characteristic was 'a motivating factor' in the employment action and (2) that the employer's 'same decision' evidence serves as an affirmative defense with respect to the scope of remedies, not as a defense to liability." Costa v. Desert Palace, Inc., 299 F.3d 838, 850 (9th Cir. 2002) (en banc) ("Costa")(aff'd Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003)).

In Costa, the plaintiff brought gender discrimination and sexual harassment claims against her employer. The en banc panel attempted to straighten out some misconceptions regarding burdens of proof, summary judgment motions and jury instruction issues for employment law cases in the Ninth Circuit. The en banc panel held that based on the language and legislative history of the 1991 amendments, the plaintiff's burden of establishing a violation of Title VII through a preponderance of evidence can be based on direct or circumstantial evidence that a protected characteristic played "a motivating factor." Id. at 853-854.

The Supreme Court affirmed the Ninth Circuit's analysis in Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003) ("Desert Palace"), that after the 1991 amendments to the Civil Rights Act, it is clear that direct evidence of discrimination is not required in order to prove employment discrimination in mixed-motive cases under Title VII and plaintiff could carry his/her burden via direct or circumstantial evidence.

The question in this case is whether the standard of proof set forth in Costa applies to retaliation cases. One viewpoint is that the 1991 amendments did not affect retaliation cases and so the direct evidence requirement in Justice O'Connor's Price Waterhouse decision still applies to mixed-motive retaliation cases. See, Funai v. Brownlee, 369 F. Supp.2d 1222 (D. Hawaii 2004) (citing decisions in the First, Third, Fourth and Seventh Circuits). The other viewpoint is that the Ninth Circuit has historically said the standards of proof are the same for Title VII discrimination and retaliations claims and recently ruled in "any" Title VII action the standard of proof allows for direct or circumstantial evidence to be used by plaintiff. This Court finds the latter viewpoint is well-reasoned and supported by an examination of the case law and that the 1991 amendments to the Civil Rights Act affect the remedies available to a plaintiff, not the standard of proof for purposes of a summary judgment motion.

The Ninth Circuit clearly acknowledges a plaintiff can bring a mixed-motive retaliation claim as well as pretext (or single motive) retaliation claim. See Stegall v. Citadel Broadcasting Co., 350 F.3d 1061 (9th Cir. 2004). The analysis in Stegall primarily focused on whether plaintiff had survived summary judgment on her pretext claim, but the court did acknowledge the facts of Stegall arguably support a mixed-motive claim. The Stegall court did not specifically analyze whether the direct evidence only standard of proof applied for retaliation mixed-motive cases at the summary judgment stage. Rather, the Court held that "the plaintiff in any Title VII case may establish a violation through a preponderance of evidence (whether direct or circumstantial) that a protected characteristic played 'a motivating factor.'" Id. at 1068 (citing Costa v. Desert Palace, Inc., 299 F.3d 838, 853-54 (9th Cir. 2002) (en banc).

It is this Court's interpretation of Stegall and the en banc decision in Costa, that the Ninth Circuit finds the standard of proof should be the same for all Title VII cases since it did not set forth a different rule for retaliation claims and in Yartzoff v. Thomas, 809 F.2d 1371 (9th Cir. 1987) held the same standard of proof applied to retaliation cases. This conclusion seems logical as well since all civil cases allow the plaintiff to prove his or her case using either direct or circumstantial evidence and this Court instructs jurys to consider both direct and circumstantial evidence in reaching their verdicts. Stegall at 1066; Ninth Circuit Model Civil Jury Instructions 1.6 and 3.5. Moreover, trying to figure out the import of the passing reference to "direct evidence" in Justice O'Connor's concurring opinion in Price Waterhouse results in a conundrum. Costa at 851 (the passing reference to direct evidence has "spawned a virtual cottage industry in litigation over the effect and meaning of the phrase"). This conclusion is also consistent with the Ninth Circuit's analysis that whether a case is a mixed-motive case or a pretext case is more a question for the trial versus a motion for summary judgment. Stegall at 1067; Costa at 856 ("Following the 1991 amendments characterizing the evidence as mixed-motive instead of single-motive results only in the availability of a different defense, a difference which derives directly from the statutory text, not from judicially created proof structures."). Furthermore, Title VII is silent with respect to the type of evidence required for retaliation cases, so it would be unfair and prejudicial to apply a heightened standard of proof where Title VII is also silent with respect to the type of evidence for

discrimination cases. Desert Palace at 99 ("we should not depart from the '[c]onventional rul[e] of civil litigation that generally applies to all Title VII cases.'")(citations omitted). The goal of Title VII is to eliminate unlawful employment practices and the heightened and unique standard of proof for retaliation cases, does not meet the public policy goal of prohibiting discrimination and retaliatory discharges.

While other circuits have held there is a direct evidence requirement for mixed-motive retaliation cases which survives due to the Price Waterhouse decision, these cases are not binding on this Court and were issued long before the Supreme Court's ruling in Desert Palace. This Court agrees, however, with the other circuits that the "same decision" defense from Price Waterhouse applies to retaliation cases to provide a complete defense for employers, but is not a complete defense in Title VII cases under § 2000e-2(m) cases.[2] See Funai v. Brownlee, 369 F.Supp.2d 1222, 1227 (D. Hawaii 2004) (Congress amended the Civil Rights Act in 1991 "to allow plaintiffs that can show that 'discrimination' was a motivating factor in an adverse employment action against them to obtain injunctive relief and recover attorneys fees *even if* defendants are able to show that they would have come to the 'same decision' without the illegal consideration.")(emphasis in original); Behne v. Microtouch Systems, Inc., 58 F.Supp.2d 1096 (N.D. Cal. 1999), aff'd Behne v. 3M Microtouch Systems, Inc., 11 Fed. Appx. 856 (9th Cir. (Cal.) Apr 05, 2001) (not selected for publication in the Federal Reporter, NO. 99-17049, 99-17056). Stated another way, the complete "same decision defense" set forth in Price Waterhouse still applies to retaliation claims, but the standard of proof is the same for single motive and mixed-motive cases.

B. McDonnell Douglas Analysis

The en banc Costa decision also clarified the misunderstanding of the McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L. Ed. 668 (1973) burden shifting analysis (sometimes referred to as the "pretext" analysis) for summary judgment motions and the single-

---

[2] Discrimination based on retaliation which is prohibited by § 2000e-3(a) is absent from the list of protected categories in § 2000e-2(m). Therefore, this Court agrees with the analysis of the Funai court and the other circuits that when Congress amended the Civil Rights Act in 1991 it did not provide the same "relief" to plaintiffs in mixed-motive retaliation cases as it did for discrimination cases under § 2000e-2(m).

motive/mixed-motive terms which refer to theories by which defendant opposes plaintiffs claims of retaliation. Costa at 854. For purposes of surviving summary judgment, a plaintiff can use the *prima facie* analysis set forth in the McDonnell Douglas presumption via the burden shifting analysis **or** a plaintiff can respond to summary judgment with other sufficient evidence - direct or circumstantial- of discriminatory or retaliatory intent. Id. at 855.

> 1) Plaintiff's *Prima Facie* Retaliation case

In the present case, the Court finds the Plaintiff has argued the *prima facie* McDonnell Douglas presumption for purposes of summary judgment. To establish a *prima facie* case of retaliation under the ADA, a plaintiff must show:

> (1) he or she engaged in activity protected by the ADA, (2) the employer subjected him or her to an adverse employment decision, and (3) that there was a causal link between the protected activity and the employment action.

Id.

In reviewing the record in this case, the Court finds Plaintiff has established her *prima facie* case for retaliation. She sent an email on January 25, 2005, regarding the non-ADA complaint entrance to the LINC facility which Plaintiff reasonably believed was a protected activity under the ADA; plaintiff was terminated shortly after making the ADA complaint so there was arguably a causal link between the protected activity of complaining about accessability under the ADA and being terminated. LINC agrees the entrance Plaintiff was complaining about did not meet ADA requirements at the time the email was sent. Within a few days of the email, Plaintiff was terminated for cause. "Cause sufficient to establish the third element of the *prima facie* case may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir. 1987) (citations omitted).

Defendant argues there is not causal link between the alleged protected activity of identifying a non-compliant door and Plaintiff's termination. Howard admitted in his deposition that Kotewa's comments regarding ADA compliance with the front entrance was a valid comment, but there was no evidence presented by Plaintiff that anyone was ever denied access to LINC or that LINC

intended not to bring the door up to ADA standards as part of moving into the space. Defendant maintains LINC's mission is to advocate for disabled persons, so it is inconsistent with the mission of LINC to fire an employee for raising the issue that the new front door is not ADA accessible for disabled workers and clients. In considering the totality of the circumstances surrounding the move into the new space, Defendant argues Plaintiff was not fired for raising issues regarding the front door. However, for purposes of summary judgment the facts are viewed in a light most favorable to the non-moving party and it is possible a reasonable fact finder could find that Kotewa's first email on January 25, 2005 was the reason she was terminated.

### 2) Burden of Production shifts to Employer to Rebut Presumption of Retaliation

Upon a *prima facie* showing, the burden shifts to the defendant to produce some evidence demonstrating a legitimate, non-discriminatory/retaliatory reason for the employee's termination. Stegall v. Citadel Broadcasting Co., 350 F.2d 1061,1066 (9th Cir. 2004). If the defendant meets this burden of production, any presumption that the defendant retaliated in violation of the ADA is dropped and the plaintiff must then show that the defendant's alleged reason for termination was merely a pretext for a discriminatory motive. Id. "The burden of persuasion, as opposed to production, however, remains with the plaintiff at all times." Bodett v. Coxcom, 366 F.3d 736, 743 (9th Cir. 2004)(citations omitted).

In the present case, the Defendant employer maintains the firing of Kotewa was not based on the fact that she complained about the non-compliant entrance, but the history of difficulties in relationships with co-workers, insubordination, and her follow-up email regarding the entrance that created more difficulties with co-workers. Based on the record presented in the motion for summary judgment, the Court finds LINC has presented legitimate business reasons for the termination that do not involve retaliation for Kotewa's ADA complaint regarding the entrances to the facility which LINC admits was a valid complaint when LINC first moved into the space and such modifications were being addressed along with other remodel issues. Howard has testified Kotewa's three allegations regarding co-workers in her responsive email at 4:56 p.m. which Howard investigated and found meritless along with consideration of past co-worker issues were the reason Kotewa was

fired. The Court finds the employer has articulated legitimate non-retaliatory reasons for the termination so the presumption of retaliation is dropped.

### 3) Plaintiff's burden to establish pretext on the part of the employer

The Court finds the burden now shifts back to Plaintiff to establish LINC's articulated non-discriminatory reasons for termination were pretextual. Plaintiff has two ways to establish the employer's explanation for firing her was actually a pretext for retaliation: "directly persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Stegall at 1067 (citing Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981).

> The evidence proffered can be circumstantial or direct. "When the plaintiff offers direct evidence of discriminatory motive, a triable issue as to the actual motivation of the employer is created even if the evidence is not substantial . . . . Direct evidence is evidence, which, if believed, proves the fact of discriminatory animus without inference or presumption." "[W]here direct evidence is unavailable, however, the plaintiff may come forward with circumstantial evidence . . . to show that the employer's proffered motives were not the actual motives because they are inconsistent or otherwise not believable. Such evidence . . . must be 'specific' and 'substantial' in order to create a triable issue with respect to whether the employer intended to discriminate on the basis of [a prohibited ground]."

Bodett v. Coxcom, 366 F.3d 736, 743 (9th Cir. 2004)(citations omitted).

Plaintiff must produce evidence in addition to the evidence for her *prima facie* case in order for the pretext evidence (direct or circumstantial) to be considered "specific and substantial," but the court need not ignore the evidence in support of the *prima facie* case. Stegall at 1069. In the present case, the Court can consider the evidence that supported the *prima facie* case to also support the pretext analysis. "Temporal proximity between protected activity and an adverse employment action can by itself constitute sufficient circumstantial evidence of retaliation in some cases." Bell v. Clackamas County, 341 F.3d 858, 865 (9th Cir. 2003). The fact plaintiff was terminated within a few days of sending her email alone may not establish circumstantial evidence of pretext, but when the timing is combined with the fact Kotewa had a good performance review the month before her termination, this is specific and sufficient circumstantial evidence of pretext to allow plaintiff to survive summary judgment. Also, in viewing the evidence in a light most favorable to Plaintiff, the Court can infer from Howard's deposition testimony that Kotewa was not going to be terminated

prior to her sending emails regarding the lack of access to the building. For these reasons, the Court finds genuine issues of material fact exist as to the motives of the employer and summary judgment on the claim of retaliation under the ADA is denied.

## The Trial

Based on the Court's ruling on the motion for summary judgment, the trial remains set for February 27, 2007. At trial, the <u>McDonnell Douglas</u> burden shifting test will not be presented to the jury in the instructions. As stated in the Ninth Circuit en banc decision:

> To summarize: <u>McDonnell Douglas</u> and "mixed-motive" are not two opposing types of cases. Rather, they are separate inquiries that occur at separate stages of the litigations. Nor are "single-motive" and "mixed-motive" cases fundamentally different categories of cases. Both require the employee to prove discrimination; they simply reflect the type of evidence offered. Where the employer asserts that, even if the factfinder determines a discriminatory motive exists, the employer would in any event have taken the adverse employment action for other reasons, it may take advantage of the "same defense" affirmative defense. The remedies will differ if the employer prevails on that defense.

<u>Costa</u> at 857.

It is anticipated based on the record before this Court that Plaintiff will be arguing a mixed-motive theory of the case at trial. Under this theory, Plaintiff will need to prove by a preponderance of the evidence that her emailed ADA complaint regarding accessbility was a "motivating factor" in the decision to terminate Kotewa. See <u>Cordova v. State Farm Ins. Cos.</u>, 124 F.3d 1145 (9th Cir. 1997). However, because this is a retaliation case, LINC is entitled to present a "same decision" affirmative defense pursuant to <u>Price Waterhouse</u> which, if successful, would prohibit any relief by Plaintiff.

If the Plaintiff presents a single-motive or pretext theory of the case, it will be Plaintiff's burden to prove by a preponderance of the evidence that Howard fired Kotewa in retaliation for her sending the email regarding accessability and the other reasons given by the employer for her termination are not legitimate as they are mere pretext. Only after hearing all the evidence, will the Court determine whether a mixed motive and/or a pretext instruction will be given to the jury.

## Order

Being fully advised in the premises, the Court hereby orders that:

1) Plaintiff's Motion to Present Live Testimony (Docket No. 21) is DENIED.

2) Defendant LINC's motion for summary judgment (Docket No. 16) is GRANTED IN PART AND DENIED IN PART. All of Plaintiff's remaining claims except for termination based on retaliation under the ADA are dismissed.

DATED: **February 2, 2007**

/s/ Edward J. Lodge
Honorable Edward J. Lodge
U. S. District Judge